**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA and MARENALLEY CONSTRUCTION, LLC, Plaintiffs,** | **CIVIL ACTION** |
| **v.** | |
| **ZURICH AMERICAN INSURANCE COMPANY and NASON CONSTRUCTION, INC., Defendants.** | **NO.  14-4581** |

## MEMORANDUM OPINION

This case involves a payment dispute between a government contractor, Nason

Construction, Inc. ("Nason"); its surety, Zurich American Insurance Company ("Zurich"); and a

subcontractor, Marenalley Construction, LLC ("Marenalley"), with respect to a construction

project for the United States Department of Veterans Affairs (the "VA") located in Philadelphia,

Pennsylvania (the "Project").  Marenalley claims it is owed compensation for certain additional

work it performed on the Project.  Nason currently is pursuing additional payment from the VA

relating to Marenalley's and other claims in an administrative dispute resolution process set out

in its contract with the VA.  To date, the VA has not approved payment for the additional work.

Marenalley filed this action pursuant to the Miller Act, 40 U.S.C. §§ 3131-33, to recover

against Zurich's surety bond for the additional work.  The Miller Act provides a subcontractor

the right to bring suit against the prime contractor's surety bond if the subcontractor is not paid

within ninety days of the completion of its work.  *Id*. § 3133(b)(1).   Nason and Zurich have

moved to dismiss, arguing that Marenalley agreed in its subcontract with Nason to pursue any

claims it may have involving the VA through the administrative disputes resolution process set

out in Nason's prime contact with the VA prior to bringing suit against the bond.  In the alternative, Nason and Zurich request this action be stayed pending completion of that process.

The issues before the Court are: (1) whether the terms of the subcontract between Nason and Marenalley effectively require Marenalley to await the resolution of the administrative dispute resolution process provided for by the prime contract between Nason and the VA before pursuing a claim against Nason's bond; (2) whether this action should be dismissed pending resolution of the administrative process; and (3) whether, in the alternative, this action should be stayed pending the resolution of the administrative process.  The answer to each of these questions is no.  The Court finds that the subcontract provisions on which Nason and Zurich rely do not waive Marenalley's Miller Act rights and, thus, will deny the motion to dismiss.  Neither, for the reasons set forth below, will it stay this action pending completion of the administrative process.

## I.    BACKGROUND

The VA awarded a contract to Nason on December 18, 2009, for the construction of a parking garage at the VA Medical Center in Philadelphia, Pennsylvania (the "Prime Contract"). Compl. ¶ 5.  Zurich issued a bond on behalf of Nason to guarantee payment to those who furnished labor or materials to the Project (the "Payment Bond").  *Id*. ¶ 6.  On or about May 3, 2010, Marenalley entered into a subcontract with Nason to perform work on the Project in exchange for a lump sum payment of $1,330,000 (the "Subcontract").  *Id*. ¶ 8.  In the course of contract performance, the VA added additional work for Marenalley, and Marenalley encountered unexpected conditions that added to the costs of its work (together, the "Additional Work").  *Id*. ¶¶ 10-11.  Marenalley submitted proposed change orders and requests for equitable adjustment to Nason to compensate it for the Additional Work.  *Id*. 8 ¶ 11; Opp'n. at 4.

2

On August 7, 2014, Nason sought additional compensation from the VA pursuant to the terms of the Prime Contract (Nason's "Certified Claim").  Mot. 18 at 6.  Included along with its own claims and the claims of other subcontractors, Nason sought compensation for the Additional Work performed by Marenalley.  Opp'n at 4-5, 14-15.  Marenalley assisted Nason in the preparation of the claim to the VA that Nason submitted with respect to Marenalley's Additional Work.  *Id.* at 7.  The VA has yet to issue a decision on Nason's request for additional compensation.  Mot. at 6.  While Nason's Certified Claim remains pending, Marenalley filed this action against Zurich, seeking to recover from the surety bond.  Marenalley seeks $590,345.91 in compensation for labor and materials it furnished in completing the Additional Work.  Nason intervened as a party to this action.

The Prime Contract contains a disputes resolution clause incorporating the terms of the Contracts Disputes Act of 1978 (41 U.S.C. §§ 601-613).  Mot. Ex. 2 ¶ 4.31(a).  The Contract Disputes Act (the "CDA") provides for an administrative process in which Nason first was required to submit its claims for payment to the government's contracting officer.  41 U.S.C. § 605(a) (1978), *amended by* 41 U.S.C. § 7103.  The statute requires that the officer issue a decision "within a reasonable time, . . . taking into account such factors as the size and complexity of the claim and the adequacy of the information in support of the claim provided by the contractor."  *Id.* § 605(c)(3).[1]  If the contractor chooses to do so, it may appeal the contracting officer's decision to the Board of Contract Appeals, *id*. § 606, *amended by* 41 U.S.C. § 7104 (2011), or to the United States Court of Federal Claims, *id*. § 609, *amended by* 41 U.S.C. § 7104.

---

[1]   *See also* 41 U.S.C. § 605(c)(2)(B) (For claims in excess of $100,000, the Contracting Officer "shall within sixty days of receipt of a submitted certified claim, . . . notify the Contractor of the time within which a decision will be issued.").

Nason and Zurich contend that various provisions in the Subcontract—Section 1.1., Article 2 and Sections 5.3, 6.1.1, and 6.2—incorporate the Prime Contract's dispute resolution provision into the Subcontract.  They argue that such incorporation requires Marenalley to wait until the resolution of Nason's CDA disputes resolution process with the VA before bringing this action against Nason's bond with Zurich.  For that reason, they argue that this action should be dismissed or stayed pending resolution of the CDA process.

      **B.**     ***The Relationships Between Marenalley, Nason and the VA***

Marenalley has no privity of contract with the VA.  Therefore, it has no right to pursue its claim directly against the VA for additional compensation due it for changes made by the VA or by Nason to its work under the Subcontract.  *United States v. Blair*, 321 U.S. 730, 737 (1944). "The Government does not recognize or deal with the subcontractor and owes no obligation to him for the work he performs."  *United States ex rel. B's Co. v. Cleveland Elec. Co. of S.C.*, 373 F.2d 585, 588 (4th Cir. 1967).  The prime contractor "and only the [prime contractor] has the right to submit factual issues to the Contracting Officer. . . .  'There is no procedure by which the claim of a subcontractor can be presented against the United States except as it may become a claim of the prime contractor, since there is no contract, express or implied, between the subcontractor and the government.'"  *Beacon Constr. Co. of Mass. v. Prepackt Concrete Co.*, 375 F.2d 977, 981 (1st Cir. 1967) (quoting *Fanderlick-Locke Co. v. United States*, 285 F.2d 939, 942 (10th Cir. 1960)) (citation omitted).  Also, unlike a subcontractor on a private project, a subcontractor on a government project cannot place a lien against government property to secure payment.  *B's Co.*, 373 F.2d at 588.

When a prime contractor submits a certified claim under the CDA, it is a claim for additional compensation to the prime contractor itself.  *Beacon Construction*, 375 F.2d at 981.

4

The CDA provides only for submission of claims by a "contractor," 41 U.S.C. § 7103(a), and defines a contractor as "a party to a Federal Government contract other than the Federal Government." *Id*. § 7101(7). "Under the CDA contracting officers have jurisdiction only over claims by contractors against the government, not over claims brought directly by subcontractors." *NavCom Defense Elec., Inc. v. Ball Corp.*, 92 F.3d 877, 879-80 (9th Cir. 1996) (per curiam). In this case, while Section 5.3 of the Subcontract does require Marenalley to submit claims for additional work to Nason, nowhere does the Subcontract state that Nason is required to include any claim from Marenalley in its Certified Claim to the VA. Nor does it make any provision for Marenalley to participate in, or exercise any control over, the administrative process for the Certified Claim. Thus, any input Marenalley may have into whether or which of its claims will be included in the Certified Claim, the manner of presentation of those claims, what relief will be sought or the compromise or settlement of the claims is entirely at Nason's sufferance.

When a subcontractor and prime contractor have a dispute about the amount due the subcontractor, that dispute is not resolved in the CDA proceeding. "The Contracting Officer does not agree to act as general arbiter for the project; rather, his decision on disputes is made authoritative for the benefit of the government to provide for efficient settlement of" disputes between the government and the prime contractor. *Beacon Construction*, 375 F.2d at 981; s*ee U.S. W. Commc'n Serv. v. United States*, 940 F.2d 622, 627 (Fed. Cir. 1991) ("A government contractor's dispute with its subcontractor was by definition specifically excluded from CDA coverage."); *Fanderlik-Locke*, 285 F.2d at 942 ("[N]o provision is made for the hearing of disputes between a prime contractor and a subcontractor."). Thus, resolution of the CDA process provides no remedy to a subcontractor for any claim it may have against the prime contractor.

5

**C.**     *The Miller Act*

That remedy is found in the Miller Act, the predecessor of which, the Heard Act, was enacted in 1894, *see* Act of Aug. 13, 1894, ch. 280, 28 Stat. 278, to remedy the fact that subcontractors on government contracts too often were unable to collect payment for their work. Prime contractors often were insolvent when entering into the contracts or at their completion, and subcontractors could not place mechanics' or materialmen's liens on government property to secure payment. *United States v. Daniel, Urbahn, Seelye & Fuller*, 357 F. Supp. 853, 858 (N.D. Ill. 1973). The government previously had required prime contractors to post a bond for the protection of the United States, and the Heard Act gave those furnishing labor and materials for such contracts the right to sue against the bond in the name of the United States. *Id*. (citing H.R. Rpt. No. 97, 53d Cong., 1st Sess. 1 (1893)). In 1905, the Heard Act was amended to state a procedure for subcontractors to sue for payment. Act of Feb. 24, 1905, ch. 778, 33 Stat. 811. Subcontractors could intervene in any suit brought by the Government or, if the Government did not bring suit within six months after the "completion and final settlement" of the prime contract, could bring suit themselves against the contractor. *Daniel, Urbahn*, 357 F. Supp. at 858.

The Miller Act, 40 U.S.C § 270(a) *et seq.*, was enacted to replace the Heard Act. *See* Act of Aug. 24, 1935, ch. 642, 49 Stat. 793. Its specific purpose was to remedy the "resultant hardships" caused by the Heard Act's requirement that a subcontractor wait six months after completion of the prime contract before it could bring suit. *Daniel, Urbahn*, 357 F. Supp. at 859 (quoting H.R. Rpt. No. 1263, 74th Cong. 1st Sess. 1 (1935)). Under that requirement, a subcontractor's payment could be long delayed, putting the subcontractor to the unpalatable choice between "wait[ing] for years for their money or accept[ing] compromises which, if they

d[id] not involve greater loss, at least destroy[ed] the profitableness of the contract.  Those in financial stringency, of course, ha[d] no choice but the latter alternative." *Daniel, Urbahn*, 357 F. Supp. at 859 (quoting H.R. Rep. No. 1263, 74th Cong., 1st Sess. 2 (1935)).  The Miller Act's remedy requires a contractor to post two bonds: a performance bond for the benefit of the government, and a payment bond for the benefit of subcontractors.  40 U.S.C. § 3133(b). Furthermore, a subcontractor no longer must wait until six months after the completion of the entire project but can file suit directly against the payment bond ninety days after the completion of its own work on the project.  *Id.* § 3133(b)(1).

Congress again amended the statute in the Construction Industry Payment Protection Act of 1999, adding a new subsection (c) entitled "NONWAIVER OF RIGHTS."  Pub. L. No. 106-49, § 2(b), (c), 113 Stat. 231, August 17, 1999, which now reads:

> (c) A waiver of the right to bring a civil action on a payment bond required under this subchapter is void unless the waiver is--
>
> (1) in writing;
>
> (2) signed by the person whose right is waived; and
>
> (3) executed after the person whose right is waived has furnished labor or material for use in the performance of the contract.

40 U.S.C. § 3133(c).

## II. WHETHER THE SUBCONTRACT REQUIRES MARENALLEY TO AWAIT THE COMPLETION OF THE CDA DISPUTES RESOLUTION PROCESS BEFORE BRINGING SUIT

Regardless of how one interprets the provisions of Marenelly's Subcontract with Nason (as incorporating the Prime Contract's dispute resolution process or not) it cannot be interpreted as a waiver of Marenalley's Miller Act rights given the enactment of Section 3133(c)(3) of the Construction Industry Payment Protection Act.  *See* 40 U.S.C. § 3133(c).  Section 3133(c)(3) specifically provides that a subcontractor can waive its Miller Act rights only <u>after</u> it has

7

furnished labor or material for use in the performance of the contract.  The purpose of Section 3133(c)(3) was to prevent prime contractors from requiring that subcontractors waive their Miller Act rights as a precondition to obtaining work on federal projects.  "[T]he requirement that any waiver be executed after completion of the subcontractor's work would be meaningless if general contractors could simply craft subcontract provisions that effectively preclude Miller Act suits."  *United States ex rel. Glass, Inc. v. Patterson*, No. 12-2634, 2014 WL 442853, at * 3 (E.D. Pa. Feb. 4, 2014).  Thus, provisions in subcontracts entered into before the subcontractor's work is performed, are void even if one were to accept Nason and Zurich's interpretation of their meaning as a waiver of Marenalley's Miller Act rights.  *Id.*; *Am. Constr. & Envtl. Serv. v. Total Team Constr. Serv.*, No. 14-0087, 2014 WL 1664827, at *6 (E.D. Cal. April 24, 2014); *United States ex rel. Forest B. White, Jr. Masonry, Inc. v. Safeco Ins. Co. of Am.*, No. 13-0009, 2013 WL 5970435, at *3 (W.D. Ky. Nov. 8, 2013); *HPS Mech., Inc. v. JMR Constr. Corp.*, No. 11-2600, 2013 WL 5954895, at *8 (N.D. Cal. Nov. 6, 2013).

Although the parties do not specify in their pleadings when Marenalley began work under the Subcontract on a motion to dismiss the Court is required to draw all inferences from the facts alleged in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), and following that procedure here leads to the conclusion that the Subcontract was entered into before Marenalley commenced the Additional Work.  A review of the Complaint and the documents attached to it show that the parties agreed to the Subcontract before Marenalley performed any work on the Project.  *See, e.g.,* Compl. Ex. B at 16 ("Be advised that no work shall be performed prior to submittal of a Certificate of Insurance evidencing the insurance coverage specified in Exhibit D."); *see also id.* ("[I]f, for any reason, you commence any work contemplated under this proposed Subcontract without first receiving a

8

copy of the Subcontract signed by an authorized representative of Nason Construction, Inc., you will be considered to have unconditionally accepted this Subcontract without any modifications or additional terms.").  Here, the Subcontract was entered into before Marenalley began work on the Project  and, therefore, even if the terms on which Nason and Zurich rely do state a waiver of Maranalley's right to proceed against the Payment Bond at this time, which the Court (upon a review of those provisions) tends to conclude they do not, that waiver would be void.

III.     **WHETHER THIS ACTION SHOULD BE STAYED PENDING COMPLETION OF THE CDA PROCEESS**

Nason and Zurich argue that this action should be stayed until the completion of the Prime Contract's disputes resolution process between Nason and the VA.  The power to stay proceedings before it "so as to promote fair and efficient adjudication" is incidental to a trial court's power to schedule disposition of the cases on its docket.  *United States v. Breyer,* 41 F.3d 884, 893 (3d Cir. 1994); *Gold v. Johns–Manville Sales Corp.,* 723 F.2d 1068, 1077 (3d Cir. 1983) (citing *Landis v. N. Am. Co.,* 299 U.S. 248, 254-55 (1936)).  The power to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."  *Landis,* 299 U.S. at 254-55, 57; *Breyer*, 41 F.3d at 893.

Nason and Zurich argue that this action should be stayed because Zurich's liability is "derivative" of Nason's and Nason's liability is being determined in the CDA proceeding. Nason cites to non–Miller Act cases in which a surety's liability has been held to be derivative of the principal.[2]  Non–Miller Act cases, however are inapposite.  In Miller Act cases, the principal's and the surety's liability are only coextensive to the extent permitted by the terms of the Miller Act.  *United States ex rel. Sherman v. Carter*, 353 U.S. 216-17 (1957); *Walton Technology*, 290 F.3d at 1206.  "It is clear 'that the surety's liability on a Miller Act bond must

---

[2]     *Fairview Park Excavating Co. v. Monzo Constr. Co.*, 560 F.2d 1122, 1123 n.1 (3d Cir. 1977); *Pacific Lining Co. v. Algernon-Blair Constr. Co.*, 812 F.2d  237, 241 (5th Cir. 1987).

be at least coextensive with the obligations imposed by the Act if the bond is to have its intended effect.'"  *Walton Technology*, 290 F.3d at 1206 (quoting *Sherman*, 353 U.S. at 216); *see also T.M.S. Mechanical Contractors,* 942 F.2d at 951 ("We thus believe that the language of the statute, interpreted in light of its protective purpose, provides the analytical key to determining whether the [subcontractor] can recover under the Miller Act [rather than the ordinary rule of derivative liability].").  Thus, a subcontract term that conflicts with the Miller Act is ineffective in a suit against the surety on the payment bond.  *Walton Technology*, 290 F.3d at 1208; *see also T.M.S. Mechanical Contractors*, 942 F.2d at 949 n.6 (rejecting subcontract clause conditioning payment of subcontractor on prior payment of contractor by government as contrary to Miller Act); *U.S. Glass, Inc.*, 2014 WL 442853, at *3 (E.D. Pa. Feb. 4, 2014) ("[C]ommon sense dictates that it would defeat the policy underlying the Miller Act to read a pay-when-paid clause as precluding a subcontractor from bringing suit until its contractor receives payment." (quoting *United States ex rel. J.H. Lynch & Sons, Inc.*, 783 F. Supp. 2d 294, 298 (D.R.I. 2011) (internal quotation marks omitted)).

The Miller Act entitles Marenalley to bring suit ninety days after the completion of its work on the Project, 40 U.S.C. § 3133(b), not when and if Nason recovers from the VA.  *See Walton Technology*, 290 F.3d at 1207-08.  Conditioning Marenalley's right to recover from the Payment Bond on the completion of Nason's CDA process would be inconsistent with the terms of the Miller Act.  *See id*. at 1209.

Nason and Zurich protest that they will be prejudiced in the absence of a stay due to the costs of dual litigation and the risk of inconsistent decisions.  The Court is not overly troubled by these arguments.  "Ordinarily the fact that a prime contractor has a claim for the same amount pending under the 'disputes clause' of the prime contract, does not affect Miller Act cases."

*Fanderlik-Locke*, 285 F.2d at 942; *H.W. Caldwell*, 407 F.2d at 23-24; *United States ex rel. Daro Tech, Ltd. v. Centerre Gov't Contracting Grp., LLC*, No. 13-1811, 2014 WL 1215565, at 12 (D. Colo. Mar. 24, 2014).  "[T]he obligation to pursue and to exhaust administrative remedies . . . is the prime contractor's obligation alone, and any conflict between these divergent remedies constitutes a business risk which the parties incur by virtue of their different contracts."  *B's Co.*, 373 F.2d at 588.  Moreover, it is a risk Congress imposed by placing the CDA's exhaustion requirement on prime contractors while granting subcontractors the right to sue ninety days after completion of their work. [3]

      This is not a case of duplicative litigation.  The CDA process will determine the VA's liability to Nason.  The VA, however, has no jurisdiction over the amount that Nason must pay Marenalley and no interest in how that amount is determined.  *NavCom Defense Elec.*, 92 F.3d at 880; *U.S. West Communications Serv.*, 940 F.2d at 627; *Beacon Constrstruction*, 375 F.2d at 981, 982; *Fanderlik-Locke*, 285 F.2d at 942.  Thus, a stay would subject Marenalley to a substantial, indefinite delay as Nason's claim passes through the administrative process and court review, only to be left at the end of that process to begin again here to litigate its rights against Nason.  Congress made clear in the Miller Act its concern for providing government subcontractors the right to prompt payment by allowing them to sue against the payment bond ninety days after completion of their work rather than the previously required six months after

---

[3]    In contrast, cases in which stays have been granted involved explicit terms written into the subcontract directly addressing the subcontractor's right to pursue a claim before completion of the CDA process.  *See United States v. Dick/Morganti*, No. 07-02564, 2007 WL 3231717, at *1 (N.D. Cal. Oct. 30, 2007) (subcontractor "agree[d] . . . *to stay any action filed by the Subcontractor until the dispute resolution and appeals process between the Contractor and the Owner is exhausted*") *(*emphasis in original*); United States ex rel. Trans Coastal Roofing Co. v. David Boland, Inc.*, 922 F. Supp. 597, 598 (S.D. Fla. 1996) (subcontractor "agree[d] to stay an action or claim against [the contractor's Miller Act bond] pending the complete and final resolution of the Prime Contract's contractual remedial procedure." (alteration in original).

completion of the entire project.  It demonstrated that concern again in the Construction Industry

Payment Protection Act of 1999, when it prevented subcontractors from agreeing to waive Miller

Act rights until after obtaining a subcontract.  To stay Marenalley's attempt to exercise those

rights in the absence of any effective contractual waiver would defeat the congressional policy of

the Miller Act.  Accordingly, the motion to stay will be denied.

   An appropriate Order follows.


**Date: March 13, 2015**

        **BY THE COURT:**

        **/S/WENDY BEETLESTONE, J.**

        _____

        **WENDY BEETLESTONE, J.**